**PLANT GENETIC SYSTEMS, N.V., Plaintiff,**

v.

**CIBA SEEDS and Mycogen Plant Science, Inc., Defendants.**

No. 1:95CV00741.

United States District Court, M.D. North Carolina, Durham Division.

June 25, 1996.

Mark S. Thomas, Maupin Taylor Ellis & Adams, P.A., Raleigh, NC, for plaintiff Plant Genetic Systems, N.V.

W. Andrew Copenhaver, Elizabeth B. McGee, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for defendant Ciba Seeds.

James D. Myers, Robert William Glatz, Bell, Seltzer, Park & Gibson, P.A., Raleigh, NC, for defendant Mycogen Plant Science, Inc.

### MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on the Motion to Dismiss Pursuant to Rule 12(b)(2), (3) & (5), Fed.R.Civ.P.; And, In the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) And/Or § 1404(a) filed by Defendant Mycogen Plant Science, Inc.

For the reasons stated herein, the motion will be denied.

## I. FACTS

On October 18, 1995, Plaintiff Plant Genetic Systems, N.V.[1] ("PGS") filed an action against Defendant Ciba Seeds[2] and Defendant Mycogen Plant Science, Inc.[3] ("MPSI"), alleging infringement of U.S. Patent No. 5,254,799[4] (" '799 patent") assigned to Plaintiff. The subject matter of the '799 patent is seed corn with genetically-engineered *Bacillus thuringiensis* ("Bt") genes. The concept is that seed corn containing Bt genes is more resistant to insects.

In apt time, Defendant MPSI filed this motion to dismiss or, in the alternative, to transfer all or part of the case to the U.S. District Court for the Southern District of California. Defendant MPSI states several reasons for the motion: (1) lack of personal jurisdiction over Defendant MPSI in North Carolina; (2) lack of venue in the Middle District of North Carolina; and (3) insufficiency of service of process. Alternatively, Defendant MPSI contends that the case should be transferred in whole or in part to the U.S. District Court for the Southern District of California.[5]

## II. DISCUSSION

### A. Rule 12(b)(2)—Lack of Personal Jurisdiction

■ When a motion to dismiss is made pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the burden to prove the basis for jurisdiction lies with the plaintiff. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993). The plaintiff must prove that (1) the exercise of personal jurisdiction comports with the requirements of the Due Process Clause of the Fifth Amendment, and (2) the relevant long-arm statute authorizes the exercise of personal jurisdiction over the defendant. *Id.* When deciding a motion to dismiss pursuant to Rule 12(b)(2), the court must construe all the facts in the light most favorable to the plaintiff and draw the most favorable inferences for the existence of jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

■ The North Carolina courts have given the long-arm statute a liberal construction, extending to the courts "the full jurisdictional powers permissible under federal due process." *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1064 (4th Cir.1982) (quoting *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). Thus, some decisions have indicated that the two-part test can be merged into one inquiry regarding whether due process requirements have been fulfilled. *See, e.g., Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). However, other cases have indicated

---

1. Plaintiff Plant Genetic Systems, N.V. ("PGS") is a corporation organized under the laws of Belgium with its principal office and place of business in Gent, Belgium.

2. Defendant Ciba Seeds, located in the Research Triangle Park, North Carolina, is an unincorporated division of Ciba–Geigy Corp. ("Ciba NY"), a New York corporation with over four billion dollars in annual revenue.

3. Defendant Mycogen Plant Science, Inc. ("MPSI") is a biotechnology company based in San Diego, California, which is involved in the development of insect resistant plants such as corn.

4. U.S. Patent No. 5,254,799 (" '799 patent") was issued to Plaintiff on October 19, 1993.

5. Without knowledge that Plaintiff had filed this litigation and in apprehension of this action, Defendant MPSI filed its own action in the U.S. District Court for the Southern District of California on October 31, 1995, against Plaintiff and its American subsidiary, Plant Genetic Systems America, Inc. ("PGS America") seeking, in part, a declaratory judgment that Defendant MPSI is not infringing the '799 patent. The California declaratory judgment action involves additional patents and parties not involved in the instant action.

Prior to filing the California declaratory judgment action dated October 31, 1995, Defendant MPSI filed an action in the U.S. District Court for the Southern District of California against the Monsanto Company on May 19, 1995, alleging infringement of U.S. Patent No. 5,380,831 (" '831 patent").

Both California actions have been assigned to U.S. Magistrate Judge Leo S. Papas, who has acquired expertise in relation to *Bacillus thuringiensis* ("Bt") gene technology. Magistrate Judge Papas has appointed a special master, Thomas Kiley, for the purpose of obtaining expert assistance and advice in the area of Bt gene technology.

that both prongs of the test must be analyzed. *See, e.g., English & Smith v. Metzger,* 901 F.2d 36 (4th Cir.1990). This court will follow the latter approach and conduct a two-prong analysis.

### 1. Federal Due Process

◼ In order for the court to properly exercise personal jurisdiction, the defendant must have certain minimum contacts with North Carolina such that the exercise of personal jurisdiction over that defendant does "not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Later cases have clarified that the minimum contacts must be "purposeful." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). This requirement is founded on the basic principle that "there be some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The rule helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

◼ Personal jurisdiction is divided into two categories—specific and general. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984). Specific jurisdiction is exercised by the court when the suit arises out of or is related to the defendant's contacts with the forum state. General jurisdiction is exercised when the suit is not related to the defendant's contacts with the forum state. *Id.*

Defendant MPSI claims that Plaintiff has failed to produce any evidence indicating that Defendant MPSI has jurisdictionally-significant contacts with North Carolina. In addition, Defendant MPSI contends that Defendant MPSI has provided affirmative proof, by way of declaration, of the lack of any contacts between Defendant MPSI and North Carolina to warrant the exercise of jurisdiction by this court either under a specific or general jurisdiction theory.

According to Defendant MPSI, it has no facilities, assets, or employees in North Carolina; conducts no activities in this state; sells no products in North Carolina, either directly or indirectly through an intermediary; does not have a registered agent for service of process in North Carolina; is not licensed to do business in North Carolina; and does not have a bank account or own property in this state. Thus, Defendant MPSI asserts that the exercise of jurisdiction over Defendant MPSI violates the Due Process Clause.

Plaintiff contends that Defendant MPSI has contacts with North Carolina sufficient to warrant the exercise of specific jurisdiction over Defendant MPSI. Plaintiff asserts that the basis for exercising jurisdiction comes from an agreement between Defendant MPSI and Defendant Ciba Seeds, dated July 14, 1993, entitled "Agreement for Exchange of Insect Control Technology and Patent Rights" ("Agreement"). This Agreement, Plaintiff argues, provides evidence that Defendant MPSI and Defendant Ciba Seeds have actively induced each other and third parties to commit infringing activity in the Middle District of North Carolina.

> MPSI entered into the Agreement with Ciba Seeds with the hope of deriving economic gain and business advantages in North Carolina, by providing Ciba Seeds, a forum resident, with MPSI "New Bt Toxin(s)" and related MPSI information, thus obligating Ciba Seeds to "carry out transformation of said new Bt Toxin Gene(s) to produce Joint Pest Tolerant Maize Plants." This Agreement with a forum resident corporation shows that MPSI has purposefully availed itself of the privilege of conducting business within North Carolina, thereby invoking the benefits and protections of its laws.

(Pl.'s Resp. to Def. MPSI's Mot. to Dismiss at 9.) (Internal citation omitted.) Plaintiff argues that it was foreseeable that Defen-

dant MPSI's tortious active inducement of Defendant Ciba Seeds would lead to direct infringement of Plaintiff's rights in North Carolina since the terms of the Agreement specified infringement by Defendant Ciba Seeds. According to Plaintiff, Defendant MPSI "should reasonably anticipate being haled into court" in North Carolina. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. Thus, Plaintiff contends that exercising jurisdiction over Defendant MPSI fully comports with federal due process.

Defendant MPSI argues that the Agreement cited by Plaintiff does not obligate Defendant MPSI to undertake any specific obligations or activities. The Agreement was entered into only by Defendant Ciba Seeds and Agrigenetics, L.P.; Defendant MPSI is not a party to the Agreement. Defendant MPSI is merely a nominal signatory to the Agreement as managing general partner of Agrigenetics, L.P. Defendant MPSI asserts that only Agrigenetics, L.P. was bound as a result of the signing of the Agreement by Defendant MPSI. Defendant MPSI maintains that the signing of the Agreement did not bind Defendant MPSI in any way.

Before determining whether jurisdiction over Defendant MPSI in North Carolina is proper, it is important to understand the corporate structure of Defendant MPSI. Defendant MPSI is a subsidiary of Mycogen Corp. Agrigenetics, L.P., d/b/a Mycogen Plant Sciences, operated as a limited partnership, and Defendant MPSI served as the managing general partner for Agrigenetics, L.P. On December 31, 1993, Agrigenetics, L.P. incorporated, and Defendant MPSI became the majority shareholder. Agrigenetics, Inc. became a party to the Agreement through corporate succession. Presently, Agrigenetics, Inc. is a subsidiary of Mycogen Corp. but remains a *separate corporate entity* from Defendant MPSI.

■ After construing the facts in the light most favorable to Plaintiff and drawing the most favorable inferences for the existence of jurisdiction, the court finds that the signature of Defendant MPSI as managing general partner for Agrigenetics, L.P. on the Agreement is sufficient to subject Defendant MPSI to personal jurisdiction in North Carolina to the same extent that Agrigenetics, Inc. would be subject to personal jurisdiction in this state.

■ The court must now address the issue of whether the court could exercise personal jurisdiction over Agrigenetics, Inc. based on the fact that Agrigenetics, L.P. entered into the Agreement which Plaintiff asserts led to the infringement of the '799 patent. With respect to interstate contractual obligations, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are fairly subject to regulation and sanctions in the other state for the consequences of their activities. *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950).

■ In establishing jurisdiction, Plaintiff is unable to rely on the signing of the Agreement as the sole act of infringement. When the Agreement was signed on July 14, 1993, the patent had not yet been issued to Plaintiff. The Supreme Court in *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1850), addressed the nature of an inventor's interest before the issuance of a patent:

> The inventor of a new and useful improvement certainly has no exclusive right to it, until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued. But the discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make obsolete by proceeding in the manner which the law requires.

*Id.* at (10 How.) 493. Until October 19, 1993, Plaintiff merely had an inchoate exclusive right to the technology now protected by the '799 patent. On July 14, 1993, when the Agreement was signed, Plaintiff had no right to sue for patent infringement because no patent had been granted. Therefore, Plaintiff must rely on an act that occurred after the patent was granted to establish jurisdiction over Agrigenetics, Inc.

■ Plaintiff contends that under the Agreement,

MPSI [6] is continually obligated to grant Ciba Seeds the right to use MPSI's technology and patent rights to engage in commercial activity in this forum. Specifically, MPSI permits Ciba Seeds to grant third parties the right to use MPSI technology to grow Bt "Pest Tolerant Maize Plants" for a period of *three* years after the "first commercial sale of a Licensed Maize Product." MPSI expressly agrees to provide Ciba Seeds with biological materials consisting of "New Bt Toxin(s)" and pertinent information relating thereto. Both parties expressly agree to "jointly develop Joint Pest Tolerant Maize Plants using New Bt toxin Gene(s)," and to function as "joint collaborators" on seeking a single U.S. Governmental permission to commercially grow Bt corn by jointly preparing a data package for regulatory approval of "Joint Pest Tolerant Maize Plants." Both parties agree that the Bt hybrid corn seed end-product will be packaged and sold in a single trade-name "Branded Bag."

(Pl.'s Resp. to Def. MPSI's Mot. to Dismiss at 7.) (Internal citations omitted.) According to Plaintiff, the Agreement provides evidence that MPSI and Defendant Ciba Seeds have actively induced each other and third parties to commit infringing activity in North Carolina. Plaintiff alleges that it suffered (1) injury to its federal patent rights, and (2) a diminishment in the economic value of the '799 patent due to Agrigenetics, Inc.'s unauthorized and tortious infringing acts in this state subsequent to the issuance of the '799 patent on October 19, 1993.

Pursuant to 35 U.S.C. § 271, the tort of patent infringement arises from the make, sale, or use of the patented item. The situs of the patent infringement occurs where the offending act is committed. *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed.Cir.1994). Since the infringing acts occurred at Defen-

dant Ciba Seeds' plant in North Carolina, Plaintiff asserts that personal jurisdiction over Defendant MPSI in this state is proper.[7]

Construing the facts in the light most favorable to Plaintiff and drawing the most favorable inferences for the existence of jurisdiction, the court finds that Agrigenetics, Inc. has subjected itself to jurisdiction in this state. Accordingly, the court finds that Defendant MPSI subjected itself to jurisdiction in this state by signing the Agreement as managing general partner of Agrigenetics, L.P.

### 2. North Carolina Long–Arm Statute

The North Carolina long-arm statute allows a court to assume jurisdiction over a person engaged in substantial activity within North Carolina. In relevant part, the statute provides that:

> In any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party:
>
> . . . .
>
> d. Is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise.

N.C.Gen.Stat. § 1–75.4(1). Both the wording of this section and applicable case law accord liberal construction to this long-arm statute, thereby favoring a finding of personal jurisdiction. *Munchak Corp. v. Riko Enter., Inc.*, 368 F.Supp. 1366, 1371 (M.D.N.C.1973). The court must decide whether the signing of the Agreement by Defendant MPSI as managing general partner of Agrigenetics, L.P. constitutes "substantial activity" within North Carolina for purposes of the long-arm statute.

Plaintiff argues that Defendant MPSI's activity constitutes "substantial activity" in this state because the Agreement signed by Defendant MPSI as managing general partner

---

**6.** Plaintiff consistently cites Defendant MPSI as a party to the Agreement. Plaintiff contends that Defendant MPSI obligated itself under the Agreement when it signed as managing general partner on behalf of Agrigenetics, L.P. For the sake of accuracy, the court notes that the specific terms of the Agreement only obligate Agrigenetics, L.P. and Defendant Ciba Seeds.

**7.** In addition, Plaintiff argues that Defendant MPSI has received regulatory approval to commercialize insect resistant corn in the United States.

of Agrigenetics, L.P. provided for direct infringement of Plaintiff's '799 patent in North Carolina. Defendant MPSI contends that it was merely a nominal signatory to a contract with a forum resident. The Agreement did not require Defendant MPSI to perform any activities within or outside the forum, and the Agreement was executed three months prior to the issuance of the patent to Plaintiff. According to Defendant MPSI, this singular contact does not provide a basis for the exercise of general or specific jurisdiction over Defendant MPSI.

■■■ Construing the facts in the light most favorable to Plaintiff and drawing the most favorable inferences for the existence of jurisdiction, the court finds that Defendant MPSI's activity in this forum is sufficient to find jurisdiction based on the "substantial activity" test of the long-arm statute. The Agreement called for Defendant Ciba Seeds and Defendant MPSI as managing general partner of Agrigenetics, L.P. to develop pest tolerant corn seed. Plaintiff asserts that this seed infringes the '799 patent. While the Agreement was signed three months *prior to* the issuance of the patent to Plaintiff, the infringement, if at all, occurred *after* issuance of the patent. For the reasons stated herein, the court finds that jurisdiction over Defendant MPSI is proper under the North Carolina long-arm statute.

For the reasons stated herein, Defendant MPSI's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) will be denied.

### B. Rule 12(b)(3)—Lack of Venue

■■■ When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action. *Bartholomew v. Virginia Chiropractors Ass'n, Inc.,* 612 F.2d 812, 817 (4th Cir.1979), *cert. denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980). Venue in patent and copyright cases is governed by 28 U.S.C. § 1400. The Federal Circuit, in *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1584 (Fed. Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991), held that

the test for venue under section 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to 28 U.S.C. § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced. 28 U.S.C. §§ 1391(c) & 1400(b). Because the court has determined that Defendant MPSI is subject to personal jurisdiction in this district, venue is also proper.

For the reasons stated herein, Defendant MPSI's motion to dismiss for lack of venue pursuant to Rule 12(b)(3) will be denied.

### C. Rule 12(b)(5)—Insufficiency of Service of Process

In order to serve Defendant MPSI, Plaintiff served a copy of the summons and complaint on CT Corporation System, the registered agent of Mycogen Corp. Mycogen Corp. is a completely separate entity from Defendant MPSI, and CT Corporation System is not authorized to receive process on behalf of Defendant MPSI. Thus, Defendant MPSI contends that Plaintiff has not properly served Defendant MPSI.

■■■ A motion under Rule 12(b)(5) is the appropriate means for challenging the manner or sufficiency of service of process. *Chilicky v. Schweiker,* 796 F.2d 1131, 1136 (9th Cir.1986), *rev'd on other grounds,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Orbis Marine Enter., Inc. v. TEC Marine Lines, Ltd.,* 692 F.Supp. 280, 281 n. 3 (S.D.N.Y.1988). The plaintiff bears the burden of establishing that service of process has been accomplished in a manner that complies with Rule 4. *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock,* 698 F.Supp. 1453, 1459 (S.D.Ind.1988).

■■■ A corporate defendant that fails to receive *actual* notice of a claim against it suffers no due process violations so long as the notice given was of a nature reasonably calculated to provide actual notice and an opportunity to defend. *Capstar Corp. v. Pristine Indus., Inc.,* 768 F.Supp. 518, 521 (W.D.N.C.1991). Plaintiff initially served the summons and complaint on Mycogen Corp., the parent corporation of Defendant MPSI. After being informed of the problem with

service of process, Plaintiff effected service on Defendant MPSI by personal service on Jerry Caulder, president of Defendant MPSI, on January 10, 1996. Dismissal under Rule 12(b)(5) is "not justified where it appears that service can be properly made." *Coastal Neuro–Psychiatric Assoc. v. Onslow County Hosp. Auth.*, 607 F.Supp. 49 (E.D.N.C.1985).

Defendant MPSI has not suffered any prejudice as a result of the initial difficulty in effecting service of process. For the reasons stated herein, Defendant MPSI's motion to dismiss for insufficiency of service of process pursuant to Rule 12(b)(5) will be denied.

### D. Transfer of Case to the U.S. District Court for the Southern District of California Under 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), venue may be transferred "[f]or the convenience of the parties and witnesses" or "in the interest of justice." However, this language is too general to be dispositive in most cases. *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253, 1255 (E.D.Va.1988).

■■■■ Courts consider and weigh the following judge-made factors when ruling on a section 1404(a) motion to transfer: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws. *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F.Supp. 446, 450–51 (W.D.N.C.1989). When deciding a motion to transfer, it is important to bear in mind that such a motion should not be granted if it simply shifts the inconvenience from the defendant to the plaintiff. *Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 841 F.Supp. 719, 721 (M.D.N.C.1993).

■■■■ After consideration of the relevant factors and the arguments of counsel, the court finds that it is not appropriate to transfer this case in whole or in part to the Southern District of California. Weighing strongly in this determination is the fact that the litigation against Defendant Ciba Seeds will go forward in this district regardless of whether Defendant MPSI is present.

For the reasons stated herein, Defendant MPSI's motion to transfer the case to the U.S. District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a) will be denied. Defendant MPSI's motion to transfer the case in whole or in part to the U.S. District Court for the Southern District of California pursuant to 28 U.S.C. § 1406(a) will be denied.

### E. Stay of Case Pending Outcome of Action in Southern District of California

Finally, the court will not stay the present proceeding pending the outcome of the action in the Southern District of California. Plaintiff is entitled to have this action continue, and there is no basis which would justify the harm that would result to Plaintiff by a stay of these proceedings. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124 (4th Cir.1983).

For the reasons stated herein, Defendant MPSI's motion to stay this case pending the outcome of the action in the U.S. District Court for the Southern District of California will be denied.

### III. CONCLUSION

For the reasons stated herein, Defendant MPSI's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) will be denied. Defendant MPSI's motion to dismiss for lack of venue pursuant to Rule 12(b)(3) will be denied. In addition, Defen-

**528**

dant MPSI's motion to dismiss for insufficiency of service of process pursuant to Rule 12(b)(5) will be denied.

Defendant MPSI's motion to transfer the case to the U.S. District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a) will be denied. Furthermore, Defendant MPSI's motion to transfer the case in whole or in part to the U.S. District Court for the Southern District of California pursuant to 28 U.S.C. § 1406(a) will be denied.

Finally, Defendant MPSI's motion to stay this case pending the outcome of the action in the U.S. District Court for the Southern District of California will be denied. The case will remain for trial in the Middle District of North Carolina.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.