JIM MYERS & SON, INC., Plaintiff,

v.

MOTION INDUSTRIES, INC., Rockwell International Corporation, and Reliance Electrical Industrial Co., Defendants,

v.

J.F. Cavanaugh Co. Inc., and McNamee, Porter & Seeley, Inc. a/k/a Tetra Tech MPS, Third Party Defendants.

No. Civ. 3:00CV462–H.

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 4, 2001.

John E. Hodge, Jr., Charlotte, NC, for plaintiff.

Robert C. Dortch, Jr., Sellers, Hinshaw, Ayers, Dortch & Lyons, P.A., Charlotte, NC, for Motion Industries, Inc., defendant.

Wayne K. Maiorano, Peter J. Marino, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, Rockwell Intern. Corp., Reliance Elec. Indust. Co., defendants.

Mel J. Garofalo, Hedrick, Eatman, Gardner & Kincheloe, Charlotte, NC, Peter J. Cavanaugh, Federlein & Keranen PC, Bloomfield Hills, MI, for J.F. Cavanaugh Co., Inc., defendant.

Michael G. Adams, Jami M. Jackson, Parker, Poe, Adams & Bernstein, Charlotte, NC, for McNamee, Porter & Seeley, Inc., defendant.

### MEMORANDUM AND ORDER

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the following motions and memoranda:

1. Third Party Defendant McNamee, Porter & Seeley, Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 16) and "Brief in Support ..." (document # 17), both filed January 22, 2001;

2. Third Party Plaintiffs Rockwell International Corporation and Reliance Electrical Industrial Co.'s "Memorandum ... in Opposition ..." (document # 22) filed February 8, 2001;

3. Third Party Defendant McNamee, Porter & Seeley, Inc.'s "Reply ..." (document # 24) filed February 16, 2001;

4. Third Party Defendant J.F. Cavanaugh Co., Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 25) and "Brief in Support ..." (document # 26), both filed February 19, 2001;

5. Third Party Plaintiffs Rockwell International Corporation and Reliance Electrical Industrial Co.'s "Memorandum ... in Opposition ..." (document # 30) filed March 8, 2001; and

6. Third Party Defendant J.F. Cavanaugh Co., Inc.'s "Reply ..." (document # 34) filed March 19, 2001.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant* Third Party Defendant McNamee, Porter & Seeley, Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 16), but will *deny* Third Party Defendant J.F. Cavanaugh Co., Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 25), as discussed below.

### I. FACTUAL AND PROCEDURAL HISTORY

This is a breach of contract and negligence action seeking damages. The Defendants/Third Party Plaintiffs Rockwell International Corporation and Reliance Electrical Industrial Co. filed a Third Party Complaint seeking indemnification for any amounts they may be required to pay to the Plaintiff.

The Plaintiff, Jim Myers and Son, Inc. ("Myers"), is a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina. The Defendant Motion Industries, Inc. ("Motion") is a Delaware corporation authorized to do business in North Carolina.

The Defendant/Third Party Plaintiff Reliance Electric Industrial Co. ("Reliance") is a Delaware corporation with its principal place of business in South Carolina. Reliance is authorized to do business in North Carolina and is a wholly owned subsidiary of Defendant/Third Party Plaintiff Rockwell International Corporation ("Rockwell"), a Delaware corporation with its principal place of business in Wisconsin.

Third Party Defendants, J.F. Cavanaugh Co., Inc. ("Cavanaugh") and McNamee, Porter & Seeley, Inc. ("MPS"), are both Michigan corporations with their principal places of business in Michigan. MPS is an engineering firm and a wholly owned subsidiary of Tetra Tech, Inc. ("Tetra Tech"), a corporation authorized to do business in North Carolina and maintaining two North Carolina offices.[1] Since July 1998, MPS has done business under the assumed name of "Tetra Tech MPS"; however, MPS maintains offices only in Michigan, Wisconsin, and Kentucky and has never done business in North Carolina. MPS advertises through a passive "information only" Internet website which is not used for taking sales orders.

The relevant events arose from the construction of a water treatment facility ("the Plant") for the City of Detroit, Michigan ("the City"). MPS contracted with the City to serve as design engineer and provided all design specifications for the project, including that the Plant's flocculation equipment be secured with "316 steel" bolts.[2] Cavanaugh served as mechanical subcontractor on the project.[3]

On April 1, 1997, Cavanaugh entered into a contract with Myers, through Myers' Charlotte, North Carolina, office, to purchase the Plant's flocculation equipment, including the required couplings and bolts. Cavanaugh contends that it specified that the couplings use "316 steel" bolts.

In August 1997, Myers contracted with Motion to purchase "Para–Flex Couplings." Motion, in turn, entered into a contract to purchase the couplings from Reliance. All contacts between Myers, Motion, and Reliance occurred in their North Carolina offices. On October 31, 1997, Reliance shipped Para–Flex Couplings containing not "316 steel" but "410 steel" bolts, which had been manufactured at Reliance's Weaverville, North Carolina facility, which is located within the Western District.

At some time thereafter, the flocculation equipment, including the couplings and "410 steel" bolts, were installed at the Plant. In September 1998, it was discovered that the bolts had failed. On November 30, 1998, Cavanaugh sent Myers an invoice for $99,459—the cost of replacing the damaged equipment—which Myers paid.

On August 18, 2000, Myers filed this action in Mecklenburg County Superior Court seeking reimbursement from Motion and Rockwell on theories of breach of contract and negligence.

On September 19, 2000, Motion and Rockwell removed the state action to the United States District Court for the Western District of North Carolina based on diversity jurisdiction. Removal appears to

1. The record does not reflect Tetra Tech's state of incorporation. On July 8, 1998, Tetra Tech acquired 100% of MPS's outstanding stock.

2. The record does not specify the exact size or nature of the flocculation equipment or the bolts. However, the flocculation equipment was apparently attached to larger machinery or the building itself through flexible couplings which utilized steel bolts.

3. EBI–Detroit, Inc., a Michigan corporation, served as general contractor but is not a party to this action.

be proper and has not been challenged by the Plaintiff.

On November 15, 2000, and with all parties' consent, Myers amended its Complaint to name Reliance as a Defendant.

On December 1, 2000, Reliance and Rockwell filed an "Answer and Third Party Complaint" seeking indemnification from Cavanaugh and MPS for either negligently failing to specify which type of steel bolt to use in the coupling or specifying the wrong bolt.

On January 22, 2001, MPS filed its "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 16). On February 19, 2001, Cavanaugh filed its "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 25). Both motions have been fully briefed and are now ripe for determination.

## II. *DISCUSSION*

### A. *Personal Jurisdiction*

In evaluating the propriety of personal jurisdiction, analysis has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." *Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993). However, because "the North Carolina long-arm statute [N.C.Gen.Stat. § 1–75.4] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." *Id., citing Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

▪ The exercise of personal jurisdiction comports with due process when the defendant purposefully established "minimum contacts" in the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Ellicott Mach.,* 995 F.2d at 477. In addition, the court's exercise of personal jurisdiction must comport with traditional notions of "fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

▪ Later cases have emphasized that the minimum contacts must be "purposeful." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Moreover, "this purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." *Plant Genetic Systems, N.V. v. Ciba Seeds,* 933 F.Supp. 519, 523 (M.D.N.C.1996), *citing Burger King,* 471 U.S. at 472, 105 S.Ct. 2174; *and World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

▪ A court's exercise of personal jurisdiction may be specific or general. Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Columbia S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Where a court seeks to assert specific jurisdiction over a non-resident defendant, the fair warning

requirement inherent in due process still demands that the non-resident defendant have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. *See, e.g., Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir.1989). General personal jurisdiction exists, even when an action does not arise out of the non-resident defendant's contact with the forum state, if the non-resident defendant has had continuous and systematic contact with the forum state. *Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868.

### B. *MPS's "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 16)*

■ Applying the above principles, the exercise of personal jurisdiction over MPS in this forum would not comport with Fourteenth Amendment due process standards. MPS does not do business in North Carolina, nor has it ever had "continuous and systematic contact" with this state that would justify the exercise of personal jurisdiction generally. *Accord Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868.

In performing its contract with the City, there is no indication in the record that MPS ever had significant dealings with Myers—the only North Carolina corporation involved—such that it might reasonably anticipate being haled into court in North Carolina. Indeed, the Plant is located in Michigan, and the City, the general contractor, and the mechanical subcontractor (Cavanaugh) are all Michigan corporations.

Notwithstanding the Third Party Plaintiffs' arguments to the contrary, MPS's passive website, which is not used to make sales and which is not related in any way to the contracts or events giving rise to this action, does not provide a basis for personal jurisdiction. *See Superguide Corp. v. Kegan,* 987 F.Supp.481, 486 (W.D.N.C.1997) (website served as basis for personal jurisdiction only where plaintiff sought to enjoin defendant's sales, *through its website,* of plaintiff's trademarked material).

Nor does MPS's subsidiary-parent relationship with Tetra Tech, which arose only *after* the flocculation equipment was installed, create sufficient "minimum contacts" with North Carolina. *Accord Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335–38, 45 S.Ct. 250, 69 L.Ed. 634 (1925) ("mere fact" that subsidiary did business in state did not create basis for personal jurisdiction over parent); *and Stover v. O'Connell Associates, Inc.,* 84 F.3d 132, 134 (4th Cir.1996) (absent evidence that out-of-state party controlled activities of "related" in-state company, improper to exercise personal jurisdiction over out-of-state company solely on basis of existence of relationship).

In short, MPS has not had sufficient "minimum contacts" with North Carolina to satisfy due process requirements for the exercise of personal jurisdiction, and accordingly, MPS's "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 16) will be *granted.*

### C. *Cavanaugh's "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 25)*

The same analysis leads to the opposite result in regard to Cavanaugh's motion; that is, Cavanaugh *has* had sufficient "minimum contacts" with North Carolina to satisfy due process requirements for the exercise of personal jurisdiction. While it is true that Cavanaugh has not "had continuous and systematic contact" with North Carolina, *Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868, such as would justify personal jurisdiction generally, the

events which give rise to this action—and to the Third Party Complaint—do support personal jurisdiction in this specific instance. *Id.* at 414, 104 S.Ct. 1868.

 Cavanaugh contracted with Myers, a corporation incorporated and headquartered in North Carolina, by placing an order through Myers' North Carolina office. It is this contract for the purchase of the flocculation equipment and accompanying couplings and bolts—and the factual issue of what specification Cavanaugh made as to "316 steel" or "410 steel" bolts—that is at the heart of the Third Party Complaint. Moreover, it is undisputed that this contract was formed in North Carolina. *See Liberty Finance Co., et. al. v. North Augusta Computer Store, Inc.,* 100 N.C.App. 279, 285, 395 S.E.2d 709, 712 (1990) (contract for the purchase of goods is formed where the *acceptance* of the purchase order occurred).

This one contract, formed in North Carolina and so intrinsic to this dispute, is sufficient grounds for personal jurisdiction in this forum. *Accord McGee v. International Life Ins. Co.,* 355 U.S. 220, 225, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (single contract which is subject of the action and which was formed in forum state provides basis for personal jurisdiction); *English & Smith v. Metzger,* 901 F.2d 36 (4th Cir. 1990) (same); *and Prince v. Illien Adoptions Int'l Ltd.,* 806 F.Supp. 1225 (D.Md. 1992) (same).

Finally, by contracting with a North Carolina supplier, Cavanaugh purposefully availed itself of the benefits and protections of North Carolina's laws. *See Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. Certainly if Myers had refused to pay the $99,459 invoice for the damage caused by the bolts, Cavanaugh would have considered suit or enforcement of an out-of-state judgment in North Carolina as one avenue

to possible recovery. In other words, by purposefully contracting with a supplier that Cavanaugh *knew* was based in North Carolina, it had fair warning that it might be subject to litigation in this forum. *Accord Plant Genetic Systems,* 933 F.Supp. at 523, *citing Burger King,* 471 U.S. at 472, 105 S.Ct. 2174; *and World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.

Because Cavanaugh purposefully contracted with a North Carolina corporation, which contract is the subject of the Third Party Complaint, personal jurisdiction in this forum is proper and Cavanaugh's "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 25) will be *denied.*

## III. *ORDER*

NOW, THEREFORE, IT IS ORDERED:

1. Third Party Defendant McNamee, Porter & Seeley, Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 16) is **GRANTED,** and the Third Party Complaint is **DISMISSED** as to McNamee, Porter & Seeley, Inc.

2. Third Party Defendant J.F. Cavanaugh Co., Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" (document # 25) is **DENIED.**

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.